**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

JANE DOE,                    )
                                )
          Plaintiff,        )     Civil Action No. 10-1761
                                )
       v.                    )
                                )     Chief Magistrate Judge Lenihan
ALLEGHENY COUNTY, RAMON    )
C. RUSTIN, JOHN JOHNSON, JR.,    )
and ALLEGHENY CORRECTIONAL    )
HEALTH SERVICES, INC.,       )     ECF Nos. 89, 93, 97, 101, 125, 138
                                )
         Defendants.   )

## <u>MEMORANDUM OPINION</u>

Presently before the Court are Plaintiff Jane Doe's ("Plaintiff" or "Doe") Motions for

Summary Judgment against Defendants John Johnson, Jr. ("Johnson"), Allegheny Correctional

Health Services, Inc. ("ACHS"), Warden Ramon C. Rustin ("Rustin"), and Allegheny County

("the County") at ECF Nos. 89, 93, 97, and 101, respectively.  Also before the Court, are the

Motion for Summary Judgment filed by Defendants ACHS against Plaintiff at ECF No. 138, and

the Motion for Summary Judgment filed by Defendants Rustin, and the County against Plaintiff

at ECF No. 125.

After a careful review of the record, the Court will order the following:

Plaintiff's Motion for Summary Judgment against Johnson at ECF No. 89 will be granted

in its entirety.  Plaintiff's Motion for Summary Judgment against ACHS at ECF No. 93 will be

denied, and ACHS' Motion for Summary Judgment at ECF No. 138 will be granted as to

Plaintiff's § 1983 claim, and denied without prejudice as to Plaintiff's professional negligence

claim.  Plaintiff's Motion for Summary Judgment against Rustin at ECF No. 97 will be denied.

Plaintiff's Motion for Summary Judgment against the County at ECF No. 101 will be denied. Finally, the Motion for Summary Judgment filed by the County and Rustin at ECF No. 125 will be granted as to Rustin, and denied as it relates to the County.

## I.  RELEVANT FACTS

Unless otherwise indicated, the following facts are undisputed.

On March 23, 2010, Plaintiff became a pretrial detainee at the Allegheny County Jail ("Jail").  (ECF No. 92-1 at 17; ECF Nos. 95, 151 at ¶ 17; ECF Nos. 103, 156 at ¶ 4.)  At this time, Doe was pregnant and addicted to controlled substances, requiring special medical attention from the medical staff at the Jail.  (ECF Nos. 95, 151 at ¶ 18.)  In order to administer medical services to its patients, the Jail contracted with ACHS.  (ECF Nos. 95, 151 at ¶ 4; ECF Nos. 103, 156 at ¶ 7.)  ACHS, as the medical services provider to those incarcerated at the Jail, is subject to the security policies and procedures of the Jail, including its anti-fraternization policy. (ECF Nos. 95, 151 at ¶ 9; ECF Nos. 103, 156 at ¶ 10.)

Doe's special needs (pregnancy and addiction to controlled substances), necessitated that she be given Methadone for her addiction, and Phenergan injections for nausea associated with her pregnancy.  (ECF Nos. 95, 151 at ¶¶ 19-20.)  Doe's Methadone was distributed by a nurse in a locked corridor.  (ECF No. 95, 151 at ¶ 21.)  Doe's Phenergan injections were administered in an examination room with a collapsible shade pulled in front of double doors containing glass in their upper halves; one door was always left open such that conversations could be overheard, but the collapsible shade was pulled in front of the open door for visual privacy.  (ECF Nos. 95, 151 at ¶ 22.)

Johnson was a nurse employed by ACHS who regularly had the duty to administer medications to inmates, including Doe.  (ECF Nos. 95, 151 at ¶¶ 23-25.)  On October 11, 2011, Johnson pled guilty to institutional sexual assault against Doe and others in the Court of Common Pleas of Allegheny County.[1]  (ECF No. 92-9 at 2.)  According to Plaintiff, prior to April 14, 2010, Johnson performed indecent sexual acts upon Doe while alone with her in the examination room when administering her Phenergan injections.[2]  (ECF No. 95 at ¶ 44.)  Thereafter, according to Plaintiff, between April 14, 2010, and April 26, 2010, Johnson had sexual contact with Doe five (5) more times.  (ECF No. 95 at ¶ 4.)  It is undisputed that Doe did not report this abuse until April 24, 2010, when she was approached by Corrections Officer Clark who had been informed by other inmates of the alleged abuse.  (ECF No. 128-1 at 3.)  During all of his contacts with Doe, Johnson identified himself as a nurse, and was employed by ACHS.  (ECF Nos. 95, 151 at ¶ 43; ECF Nos. 148, 150 at ¶ 1.)

On April 14, 2010, an inmate named Tonya Jackson ("Jackson") filed a complaint with ACHS staff against Johnson, alleging that he had given her a candy bar, had come into her cell while the lights were off on numerous occasions to take her vitals, and alleging that he had talked "sex stuff" to her ("the Jackson complaint") (ECF Nos. 140-2, 140-3).[3]  ACHS immediately reprimanded Johnson for violating ACHS' anti-fraternization policies (ECF No. 128-1 at 18) and reported the incident to the Jail's Internal Affairs Department ("IA"), which is comprised of

---

[1] 18 Pa. Cons. Stat. Ann. § 3124.2(a) provides that "a person who is an employee or agent of the Department of Corrections or a county correctional authority . . . commits a felony of the third degree when that person engages in sexual intercourse, deviate sexual intercourse or indecent contact with an inmate, detainee, [or] patient . . . ."  18 Pa. Cons. Stat. Ann. § 3124.2(a) (West 2000).

[2] Plaintiff alleges that these acts included fondling of her breasts, digital penetration of her vagina, and rubbing his crotch area on her hand.  Johnson admitted touching Plaintiff in exchange for candy bars and sodas in his statement to the Allegheny County Police Department.  (ECF No. 92-2 at 21.)  Johnson also admitted to indecent contact with two other women in the same statement.  (ECF No. 92-2 at 21.)

[3] Defendant ACHS submits the Affidavit of the ACHS Director of Nursing Kimberly Gasser who stated that when she interviewed Jackson, Jackson indicated only that Jackson felt uncomfortable around Johnson.  (ECF No. 140-4 at ¶ 23.)  Yet, the Treatment Staff Incident Report generated by ACHS employee Tondra Ferris describing Jackson's complaint indicates that Johnson said "sex stuff" to Jackson.  (ECF Nos. 140-2, 140-3.)

detectives from the Allegheny County Police Department and Jail employees.  (ECF Nos. 95, 151 at ¶¶ 26-27; ECF Nos. 103, 156 at ¶ 24.)  The Director of Nursing for ACHS, Kimberly Gasser ("Gasser"), discussed the complaint with ACHS Chief Operating Officer ("COO") Dana Phillips ("Phillips").  (ECF Nos. 95, 151 at ¶ 28.)  Phillips alerted IA.  (ECF No. 140-7 at 14.) Gasser also testified that she immediately notified IA on April 14, 2010.  (ECF No. 128-5 at 31.) Gasser and Phillips confronted Johnson about the allegations.  (ECF No. 140-7 at 28.)  Johnson admitted to Gasser some of the allegations in the complaint, including giving Jackson the candy bar.  (ECF Nos. 95, 151 at ¶¶ 29-30.)  Plaintiff contends that at this point, ACHS did not investigate Johnson's conduct in spite of ACHS policy to do so; ACHS disputes this characterization of the facts because it was ordered by the IA not to interfere with its criminal investigation.  Specifically, the Allegheny County Police officers working in IA instructed ACHS not to investigate or notify Johnson that he was being investigated, and not to take any action on the violation because it was a police matter.  (ECF Nos. 95, 151 at ¶ 31; ECF No. 140-7 at 14-15, 42.)  Plaintiff and ACHS agree, however, that the Jail's IA was responsible for investigating all criminal activities occurring within the Allegheny County Jail.  (ECF Nos. 95, 151 at ¶ 34.)

Evidence of record, however, does not reflect that the Jail's IA immediately began its investigation of Jackson's April 14, 2010 complaint upon being notified by ACHS.  (ECF No. 128-1.)  The County responds only that the IA acted in a reasonable manner in responding to and investigating the complaint.  (ECF Nos. 103, 156 at ¶ 23.)  It appears from the Police Criminal Complaint at ECF No. 128-1, that jail official reports and written statements from victims, witnesses, a nurse, and correctional officers were generated by April 23, or April 24, 2010. (ECF No. 128-1 at 3.)  It also appears that Detective Jon Comis ("Detective Comis") of IA was

not instructed to begin his investigation until April 26, 2010 when he interviewed several

individuals.  (ECF No. 128-1 at 3 ("On 4-26-2010, I (Detective Comis #411) was detailed to

investigate in the Allegheny County Jail a possible Institutional Sexual Assault . . . .").)  On

April 26, 2010, IA revoked Johnson's jail security clearance.  (ECF No. 128-1 at 12.)

Plaintiff reported Johnson's abuse when interviewed by Detective Comis on April 26,

2010, during the course of his investigation of the Jackson complaint against Johnson.  (ECF No

128-1 at 3.)  Plaintiff indicated that she was afraid to report the alleged abuse because Johnson

looked her up on the computer and knew where she lived, and also, because he was in a position

of authority over her as a jail nurse.  (ECF No. 150 at ¶ 19.)

Rustin testified that as Warden of the Jail in 2010, he was in charge of policy and its

implementation.  (ECF No. 128-7 at 7.)  He had the power to revoke security clearances of

anyone that came into the Jail including vendors and contracted personnel.  (ECF No. 128-7 at

35.)  He was the supervisor for all jail employees, but not county police employees; IA was a

collaboration of the two.  (ECF No. 128-7 at 8.)  Specifically, Rustin specified that there were

two sets of IA individuals, one that would have been employed by the Department of

Corrections, and one employed through the county police department.  (ECF No. 128-7 at 55-

56.)  Rustin testified that he wanted to be sure that there was an independent component to IA;

by assigning a county police member of the IA to the Johnson investigation, Rustin could

achieve this goal of independence and transparency.  Further, the county police segment of IA

had arrest powers while the jail employees of IA did not.  (ECF No. 128-7 at 56.)  Rustin

indicated that Detective Comis worked with IA and was part of the county police segment.  (ECF

No. 128-7 at 9.)

When IA received an incident report, Rustin would be advised of the same by someone in IA; someone would let Rustin know "what investigations they're currently looking into." (ECF No. 128-7 at 11.) If the case was criminal in nature, "then the detective that works for county police, he would advise his supervisor and file charges." (ECF No. 128-7 at 11.) Rustin did not specifically recall being informed of the Jackson complaint about Nurse Johnson, but in light of the above, believes that he would have been informed of the investigation at some point. (ECF No. 128-7 at 11.) When questioned further by Plaintiff's counsel about the criminal nature of this investigation and the fact that written reports of investigations involving criminal matters went directly to county police, Rustin indicated he just wasn't sure he received "any reports from any of the people in Internal Affairs directed to [him] regarding John Johnson." (ECF No. 128-7 at 65-66.) In addition, Rustin indicated that he would not necessarily be informed when ACHS gave Johnson a written notice of disciplinary action; there would be no reason for Rustin to be involved in ACHS' discipline of one of its employees. (ECF No. 128-7 at 49, 54.) Finally, Rustin indicated that because inmate complaints are a constant in the prison environment, Rustin would not take action on a complaint until there was some factual support or basis for the complaint. (ECF No. 128-7 at 34, 58-59.)

## II.  LEGAL STANDARD

Summary judgment is appropriate if, drawing all inferences in favor of the nonmoving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at

trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact; that is, the movant must show that the evidence of record is insufficient to carry the non-movant's burden of proof. *Id.* Once that burden has been met, the nonmoving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis added by *Matsushita* Court). An issue is genuine only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty-Lobby, Inc.*, 477 U.S. 242, 248 (1986). In *Anderson*, the United States Supreme Court noted the following:

> [A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. . . . [T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Id.* at 249-50 (internal citations omitted).

### III. ANALYSIS

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST JOHNSON

### SECTION 1983

Section 1983 of the Civil Rights Act provides as follows:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage of any State or Territory or the
> District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States or any other person within the
> jurisdiction thereof to the deprivation of any rights, privileges, or
> immunities secured by the Constitution and laws, shall be liable to
> the party injured in an action at law, suit in equity, or other proper
> proceeding for redress . . . .

42 U.S.C. § 1983.  Thus, to state a claim for relief under this provision, a plaintiff must

demonstrate that the conduct in the complaint was committed by a person or entity acting under

the color of state law and that such conduct deprived the plaintiff of rights, privileges or

immunities secured by the Constitution or the laws of the United States.  *Piecknick v.

Commonwealth of Pennsylvania,* 36 F.3d 1250, 1255-56 (3d Cir. 1994).

    1.   State Action

Preliminarily, the Court must address whether Johnson was acting under color of state

law at the time the alleged sexual assaults occurred.  ACHS contends that Johnson's activities

involving Plaintiff "were a singularly personal frolic," and thus, his conduct was not state action

for purposes of § 1983.  (ECF No. 139 at 2.)  As noted above, the "under color of law"

requirement means that purely private conduct, no matter how discriminatory or wrongful, does

not violate § 1983.  *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).  Private

conduct, however, will satisfy the "under color" requirement if the deprivation of a federal right

is "fairly attributable to the State."  *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 937 (1982).  The

United States Court of Appeals for the Third Circuit has set forth a comprehensive analysis of

the various tests used to determine whether there is a sufficiently close nexus between the State

and the challenged action such that the seemingly private conduct may be fairly treated as that of

the State.  *Kach v. Hose*, 589 F.3d 626, 646-49 (3d Cir. 2009).  These broad tests include the

following:

> (1)"whether the private entity has exercised powers that are
> traditionally the exclusive prerogative of the state"; (2) "whether
> the private party has acted with the help of or in concert with state
> officials"; and (3) whether "the [s]tate has so far insinuated itself
> into a position of interdependence with the acting party that it must
> be recognized as a joint participant in the challenged activity."

*Kach*, 589 F.3d at 647 (quoting *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1142 (3d Cir. 1995)

(other alterations, internal quotation marks and citations omitted)).

Clearly, both Johnson and ACHS are state actors under the first test.  In *West v. Atkins*,

the United States Supreme Court held that a doctor providing medical care to prison inmates was

a state actor because the prison had an absolute obligation to provide medical care to those

incarcerated within its institution.  487 U.S. 42 (1988).  In fact, the provision of medical care

inside prisons is constitutionally mandated, and therefore, the state's responsibility for providing

the constitutionally required standard of medical care cannot be relinquished by the state.  *Estelle*

*v. Gamble*, 429 U.S. 97, 103 (1976) (most elementary principles underlying Eighth Amendment

constitutional jurisprudence "establish the government's obligation to provide medical care for

those whom it is punishing by incarceration.")  Moreover, Johnson's alleged sexual abuse of

Plaintiff was committed while Johnson was engaged in the delivery of medical care to Plaintiff,

that is, while administering her Phenergan injections.  Hence, the conduct alleged in the Fourth

Amended Complaint against Johnson and ACHS was committed by a person and entity acting

under the color of state law.

2.   Fourteenth Amendment

In her Fourth Amended Complaint, Plaintiff avers that she was a pretrial detainee at the

time of the alleged sexual abuse by Johnson.  (ECF No. 85 at ¶ 41.)  Consequently, the Court

relies on the Fourteenth Amendment in analyzing Plaintiff's claims of sexual abuse against

Johnson.  *Hubbard v. Taylor,* 399 F.3d 150, 166-67 & n. 23 (3d Cir. 2005); *King v. County of*

*Gloucester,* 302 F. App'x 92, 96 (3d Cir. 2008) (citing *City of Revere v. Mass. Gen. Hosp.,* 463

U.S. 239, 244 (1983); *Hubbard,* 399 F.3d at 166).  "The applicable constitutional protection is

the Due Process Clause of the Fourteenth Amendment . . . because the failure to do so amounts

to punishment without an adjudication of guilt.  *See Hubbard[],* 399 F.3d at 166."  *King,* 302 F.

App'x at 96.  The court of appeals in *King* went on to explain:

> In assessing the denial of medical care to a pretrial detainee, the
> inquiry is whether the denial was "imposed for the purpose of
> punishment or whether it [was] but an incident of some other
> legitimate governmental purpose." *Bell v. Wolfish*, 441 U.S. 520,
> 538, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). That inquiry involves
> an indirect application of the Eighth Amendment deliberate
> indifference standard: "the Supreme Court has concluded that the
> Fourteenth Amendment affords pretrial detainees protections 'at
> least as great as the Eighth Amendment protections available to a
> convicted prisoner,' without deciding whether the Fourteenth
> Amendment provides greater protections." *Natale*, 318 F.3d at 581
> (quoting *City of Revere*, 463 U.S. at 244, 103 S.Ct. 2979); *see also*
> *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d
> Cir.1979) (holding that "at a minimum the 'deliberate indifference'
> standard of *Estelle v. Gamble*, must be met").

*Id.*  In other words, when evaluating inadequate medical care/conditions of confinement claims

by pretrial detainees, courts must apply the Eighth Amendment's deliberate indifference standard

as articulated by the Supreme Court in *Estelle v. Gamble,* 429 U.S. 97 (1976), but must view this

inquiry in the context of the standard articulated in *Bell v. Wolfish*, which applies Fourteenth

Amendment due process principles to pretrial detainees, rather than the cruel and unusual

punishment standard.  *Langella v. Cnty. of McKean,* Civ. A. No. 09-cv-311E, 2010 WL

3824222, *13 (W.D. Pa. Sept. 23, 2010) (citing *Hubbard,* 399 F.3d at 165-66).  *See also*

*Montgomery v. Ray,* 145 F. App'x 738, 739-40 (3d Cir. 2005) (vacating an order and remanding

case where district court evaluated pretrial detainee's claim involving inadequate medical

treatment under the same standards as Eighth Amendment claims).  In *Montogmery,* the court of

appeals noted its recent decision in *Hubbard,* which clarified the following:

> [T]he Eighth Amendment only acts as a floor for due process
> inquiries into medical and non-medical conditions of pretrial
> detainees.  While "the due process rights of a [pre-trial detainee]
> are *at least* as great as the Eighth Amendment protections available
> to a convicted prisoner," *Hubbard,* 399 F.3d at 166 (citation
> omitted), the proper standard for examining such claims is the
> standard set forth in *Bell v. Wolfish,* . . . *i.e.,* whether the conditions
> of confinement (or here, inadequate medical treatment) amounted
> to punishment prior to an adjudication of guilt, *Hubbard,* 399 F.3d
> at 158.

145 F. App'x at 740 (emphasis and brackets in original).

The right of an incarcerated person not to be sexually assaulted by prison personnel is

clearly established.  *See Hovater v. Robinson*, 1 F.3d 1063, 1068 (10th Cir. 1993) (prisoner has

constitutional right to be secure in her bodily integrity and free from attack by guards) (citing

*Alberti v. Klevenhagen*, 790 F.2d 1220, 1224 (5th Cir. 1986)); *Butler v. Dowd*, 979 F.2d 661, 675

(8th Cir. 1992) (en banc) (prisoners have a constitutional right to be free of sexual attacks), *cited*

*in, Lambert v. Wolfe*, Civil Action No. 96-247 Erie, 2007 WL 1830714, at *7 (W.D. Pa. June 25,

2007).  *See also White v. Ottinger*, 442 F. Supp.2d 236, 245 (E.D. Pa. 2006) (citing *Barney v.*

*Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998) ("With regard to . . . sexual assault claims, we

have expressly acknowledged that an inmate has a constitutional right to be secure in her bodily

integrity and free from attack by prison guards.") (internal quotations and citations omitted);

*Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997) ("allegation of sexual abuse may meet

both the subjective and the objective elements of the constitutional test, thereby stating an Eighth

Amendment claim under Section 1983.")).

In order to establish a claim on conditions of confinement, a plaintiff must show that she

"suffered an objectively, sufficiently serious injury," and that "prison officials inflicted the injury

with deliberate indifference." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The first prong of

the *Farmer* test is an objective one, wherein a plaintiff must show that she has been incarcerated

under conditions posing a substantial risk of harm. *Id.* The second prong is a subjective one,

requiring a plaintiff to show that defendant acted with deliberate indifference. In *Farmer*, the

United States Supreme Court clarified its meaning of the term "deliberate indifference" and held

as follows:

> We hold instead that a prison official cannot be found liable under
> the Eighth Amendment . . . unless the official knows of and
> disregards an excessive risk to inmate health or safety; the official
> must both be aware of facts from which the inference could be
> drawn that a substantial risk of serious harm exists, and he must
> also draw the inference. . . .  But an official's failure to alleviate a
> significant risk that he should have perceived but did not, while no
> cause for commendation, cannot under our cases be condemned as
> the infliction of punishment.

*Id*. at 837-38.

Here, Plaintiff moves for summary judgment against Johnson, relying on Johnson's

guilty plea colloquy to Count I of the Criminal Complaint at CC No. 2010-07554 for the charge

of institutional sexual assault in the Court of Common Pleas of Allegheny County, Criminal

Division, before Judge Anthony Mariani on October 11, 2011. (ECF No. 92-9 at 1-4.) Under

Pennsylvania law, "a conviction from a guilty plea is equivalent to a conviction from a trial-by-

jury." *DiJoseph v. Vuotto*, 968 F. Supp. 244, 247 (E.D. Pa. 1997) (citing *Commonwealth v.

Mitchell*, 535 A.2d 581, 585 (Pa. 1987)). Criminal convictions are admissible in subsequent civil

proceedings as conclusive evidence of the facts underlying the conviction.  *Folino v. Young*, 568 A.2d 171, 172 (Pa. 1990); *Mitchell*, 535 A.2d at 585 (citing *Commonwealth ex. rel. Walls v. Rundle*, 198 A.2d 528 (1964)).  In addition, a defendant may not subsequently "deny that which was established by his criminal conviction, without proof that his conviction was procured by fraud, perjury or some manner of error now sufficient to upset the conviction itself."  *Mitchell*, 535 A.2d at 585 (quoting *Hurt v. Stirone*, 206 A.2d 624, 626 (Pa. 1965)).  Apart from fearing that he might be sentenced to the maximum penalty of ten (10) years (ECF No. 157 at 29), there is no evidence before the Court that would suggest Johnson's guilty plea was procured by fraud, perjury or other improper manner.[4]  Therefore, it may be used to establish the operative facts in a subsequent civil case based on those same facts.  *Mitchell*, 535 A.2d at 584-85.  *See also Domitrovich v. Monaca*, No. 2:08cv1094, 2010 WL 3489137, at *4-5 (W.D. Pa. Sept. 1, 2010) (citing *M.B. ex rel. T.B. v. City of Philadelphia*, 128 Fed. Appx. 217, 226 (3d Cir. 2005) ("Furthermore, in Pennsylvania, 'criminal convictions are admissible in civil actions arising from the same operative facts and circumstances [and] these convictions are conclusive evidence of the criminal acts.'") (other citations omitted)).

Further, Johnson's guilty plea to the charge of institutional sexual assault against Plaintiff conclusively establishes his civil liability pursuant to 42 U.S.C. § 1983 for violating her Fourteenth Amendment right to be free from sexual assault while incarcerated as a pretrial detainee.  Johnson specifically indicated during the plea colloquy that he was pleading guilty because he was guilty.  (ECF No. 92-9 at 3.)  Hence, Plaintiff's conditions of confinement amounted to punishment prior to adjudication of guilt in violation of the Fourteenth Amendment. Consequently, Plaintiff is entitled to judgment as a matter of law against Johnson on her

---

[4] The Court has reviewed and considered Johnson's submission at ECF No. 157, and the fact that he now disputes certain allegations of his accusers; however, the fact that he entered a guilty plea to the charges is binding.

Fourteenth Amendment claim pursuant to 42 U.S.C. § 1983.   Further, Plaintiff's Eighth Amendment claim must be dismissed with prejudice as she was a pretrial detainee at the time of the events in issue.[5]   Finally, Plaintiff appears to abandon her Fourth[6] and Thirteenth Amendment claims[7], and consequently, these claims must be dismissed with prejudice.

STATE LAW CLAIMS

     1.   Professional Negligence

In her Fourth Amended Complaint, Plaintiff alleges a claim for professional negligence against Johnson pursuant to 49 Pa. Code § 21.18, "Standard of Nursing Conduct."  (ECF No. 85 at ¶¶ 53-56.)  49 Pa. Code § 21.18 provides in relevant part as follows:

> **Standards of nursing conduct.**
> (a)  A registered nurse shall:
>          . . .
>      (2) Respect and consider, while providing nursing care, the individual's right to freedom from psychological and physical abuse.
>      (3) Act to safeguard the patient from the incompetent, abusive or illegal practice of any individual.
>      (4) Safeguard the patient's dignity . . . .
>          . . .
> (b)  A registered nurse may not:
>          . . .
>      (9) Engage in conduct defined as a sexual violation or sexual impropriety in the course of a professional relationship.

---

[5] Plaintiff is correct that Eighth Amendment protections are applied by analogy because Plaintiff, as a pretrial detainee, is entitled to *at least* those protections, but it is the Fourteenth Amendment that is actually in issue.  *See Fuentes v. Wagner*, 206 F.3d 335, 344 (3d Cir. 2000), *cited in, Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012).
[6] Plaintiff offers no response to Defendant County's arguments as to why the Fourth Amendment is not in play.  *See* ECF No. 126 at 3-4 & ECF No. 131 at 8-11.  As a pretrial detainee, however, it appears that the Due Process Clause of the Fourteenth Amendment protects Plaintiff from the use of excessive force that amounts to punishment rather than the Fourth Amendment.  *See Fuentes*, 206 F.3d at 346-47 (discussing *Graham v. Conner*, 490 U.S. 386,395 n.10 (1989)).
[7] Plaintiff's Thirteenth Amendment claim also fails as a matter of law.  Although the primary purpose of the amendment was to abolish the institution of African slavery, it was also intended to protect against "involuntary servitude."  That is, it was intended to cover those forms of forced labor analogous to African slavery.  *United States v. Kozminski*, 487 U.S. 931, 942 (1988).  *See Steirer v. Bethlehem Area Sch. Dist.*, 987 F.2d 989, 998 (3d Cir. 1993), *abrogated on other grounds by, Troster v. Pennsylvania State Dep't Corrs.*, 65 F.3d 1086, 1090 (3d Cir. 1995). Here, Plaintiff's claims are devoid of any allegations of forced labor.

49 Pa. Code § 21.18 (2013).  Clearly, Johnson's guilty plea to institutional sexual assault

establishes a violation of 49 Pa. Code § 21.18 as a matter of law.  That is, in pleading guilty to

institutional sexual assault against Plaintiff, Johnson has admitted that he has "engaged in

conduct defined as a sexual violation or sexual impropriety in the course of a professional

relationship."  49 Pa. Code § 21.18 (b)(9).  Therefore, he has breached this standard of care

which proximately caused Plaintiff's injuries.  Consequently, Plaintiff is entitled to judgment as

a matter of law on her claim for professional negligence against Johnson.  Plaintiff's Motion for

Summary Judgment against Johnson will be granted on her claim of professional negligence.


2.   Battery

Plaintiff alleges a claim of battery against Johnson.  Plaintiff must prove that Johnson

intended to cause a harmful or offensive contact to Plaintiff, or an imminent apprehension of

such contact in Plaintiff, and that such contact with Plaintiff resulted.  *See Friter v. Iolab Corp.*,

607 A.2d 1111, 1115 (Pa. Super. 1992).  Here, Johnson's guilty plea to institutional sexual

assault conclusively establishes that he intended to cause a harmful or offensive contact to

Plaintiff and that such contact resulted.  Plaintiff is entitled to judgment as a matter of law on her

Pennsylvania state law battery claim against Johnson.  Plaintiff's Motion for Summary judgment

on this claim will be granted.


3.   Intentional Infliction of Emotional Distress

Plaintiff must establish the following to prove a claim of intentional infliction of

emotional distress: (1) the conduct must be extreme in degree and outrageous in character; 2) it

must be intentional or reckless; 3) it must cause emotional distress; and 4) the distress must be

15

severe. *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265, 1273 (3d Cir. 1979) (citing Restatement (Second) of Torts § 46); *Hoy v. Angelone*, 691 A.2d 476, 482 (Pa. Super. Ct. 1997). With regard to the element of outrageous conduct, Pennsylvania law requires that a plaintiff allege conduct that is "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" *Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998) (quoting *Buczek v. First Nat'l Bank of Mifflintown*, 531 A.2d 1122, 1125 (Pa. Super. Ct. 1987)). Preliminarily, it is a question for the court to determine whether "the defendant's conduct is so extreme as to permit recovery." *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988). District courts within the Third Circuit have refused to dismiss claims of intentional infliction of emotional distress brought by prisoners alleging sexual assault and that prison officials failed to protect them. *See, e.g., White v. Ottinger*, 442 F. Supp.2d 236, 251 (E.D. Pa. 2006); *Belt v. Geo Group, Inc.*, No. 06-1210, 2006 WL 1648971, at *3 (E.D. Pa. June 12, 2006). Further, "Pennsylvania courts have . . . indicated that they will be more receptive [to intentional infliction of emotional distress claims] where there is a continuing course of conduct." *Williams v. Guzzardi*, 875 F.2d 46, 52 (3d Cir. 1989). Finally, in order to prevail, a plaintiff must provide competent medical evidence to prove the existence of emotional distress. *Kazatsky v. King David Mem'l Park, Inc.,* 527 A.2d 988, 995 (Pa. 1987).

Here, Plaintiff is entitled to judgment as a matter of law on her claim of intentional infliction of emotional distress against Johnson. Again, Johnson's guilty plea to institutional sexual assault conclusively establishes that he intentionally engaged in extreme and outrageous conduct when he repeatedly sexually assaulted Plaintiff in the course of delivering medical care while she was detained in the Jail.

In support of Plaintiff's assertion that she suffered severe emotional distress as a result of Johnson's sexual assault, Plaintiff submits the declaration and report of Lawson F. Bernstein, M.D., who indicates within a reasonable degree of medical certainty that "[t]he type of transgression committed against [Plaintiff] would be expected to have adverse psychiatric consequences." (ECF No. 92-12 at 2.) The report continues as follows:

> As regards the adverse consequences that accrued to [Plaintiff] because of her experiences with this individual, one would expect any inmate patient to suffer such consequences. Further, given your client's substantial psychiatric history, she would be even more exquisitely sensitive to the adverse effects of the untoward behavior of the male nurse in question.

(ECF No. 92-12 at 2.)

Further, Plaintiff testified that her depression has become more severe since Johnson's sexual abuse, and that she has tried to kill herself as a result of the severe depression. (ECF No. 140-8 at 16, 21, 91.)[8]

Consequently, the Court finds that Plaintiff is entitled to summary judgment on her claim of intentional infliction of emotional distress against Defendant Johnson.

### PLAINTIFF'S MOTION FOR SUMMARY JUDGEMENT AGAINST ACHS AND ACHS' MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF

SECTION 1983

As noted above, the Court has already determined as a matter of law that ACHS is a state actor for purposes of § 1983 liability.

---

[8] Defendant Johnson contends that Plaintiff has a complex mental health history and that she tried to commit suicide long before the events in issue. (ECF No. 157 at 20.) A tortfeasor, however, takes his plaintiff as he finds her. *Tabor v. Miller*, 389 F.2d 645, 647-48 (3d Cir. 1968); *Pavorsky v. Engels*, 188 A.2d 731, 733 (Pa. 1963).

<u>Municipal Liability</u>

In *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658 (1978), the United States Supreme Court held that municipalities and other local governmental units are "persons" subject to liability under 42 U.S.C. § 1983.  In so ruling, however, the Court declared that municipal liability may not be premised on the mere fact that the governmental unit employed the offending official, that is, through application of the doctrine of respondeat superior.  Instead, the Court concluded that a governmental unit may be liable under § 1983 only when its "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."  *Monell*, 436 U.S. at 694.  The "official policy" requirement distinguishes acts of the municipality from acts of employees of the municipality, thereby limiting liability to action for which the municipality is actually responsible.  *Id.*

In finding municipal liability pursuant to § 1983, the plaintiff must identify the policy, custom or practice of the municipal defendant that results in the constitutional violation.  *Id.* at 690-91.  A municipal policy is made when a decision-maker issues an official proclamation or decision.  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986), *quoted in*, *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990).  A custom or practice, however, may consist of a course of conduct so permanent and widespread that it has the force of law.  *Andrews*, 895 F.2d at 1480.  To establish municipal liability based upon a custom or practice, the plaintiff must demonstrate that the decision-maker had notice that a constitutional violation could occur and that the decision-maker acted with deliberate indifference to this risk.  *Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000).  Finally, Plaintiff must show a causal connection between the custom or policy and the violation of the constitutional right.  *Bielevicz v. Dubinon*,

915 F.2d 845, 850-51 (3d Cir. 1990).  That is, a plaintiff must demonstrate an "affirmative link" or "plausible nexus" between the custom or practice and the alleged constitutional deprivation. *Bielevicz*, 915 F.2d at 850-51.

Plaintiff contends that ACHS is liable under the municipal liability theory of failure to supervise.  (ECF No. 94 at 9-11.)  The Court of Appeals for the Third Circuit set forth the standard for imposing liability against a supervisor under § 1983 in *Sample v. Diecks*, 885 F.2d 1099 (3d Cir. 1989).  Relying on the precepts set forth by the United States Supreme Court in *City of Canton v. Harris*, 489 U.S. 378 (1989), the *Sample* court noted that "a 'person' is not the 'moving force [behind] the constitutional violation' of a subordinate, unless that 'person'–whether a natural one or a municipality–has exhibited deliberate indifference to the plight of the person deprived."  *Sample*, 885 F.2d at 1118 (internal citation omitted).  The Court continued that in order to establish supervisory liability, the plaintiff must identify a specific supervisory practice or procedure that the defendant failed to employ, that the existing custom or practice without that specific practice or procedure created an unreasonable risk of harm, that defendant was aware that this unreasonable risk existed, that defendant was indifferent to that risk, and that plaintiff's harm resulted from defendant's failure to employ that supervisory practice or procedure.  885 F.2d at 1118.

Where a pattern of constitutionally cognizable injury is not presented by the record, a Plaintiff may still prove § 1983 liability pursuant to a supervisory theory.  That is, there may be cases where "the risk of constitutionally cognizable harm is so great and so obvious that the risk and the failure of supervisory officials to respond will alone support findings of the existence of an unreasonable risk, of knowledge of that unreasonable risk, and of indifference to it." *Id.*  In this instance, it is important for the court to discuss whether the Plaintiff has established the

inference on all three issues.  *Id.*

As to causation, the *Sample* court concluded as follows:

> On remand, the district court should bear in mind that under the
> teachings of *City of Canton* it is not enough for a plaintiff to argue
> that the constitutionally cognizable injury would not have occurred
> if the superior had done more than he or she did.  The district court
> must insist that [plaintiff] identify specifically what it is that
> [defendant] failed to do that evidences his deliberate indifference.
> Only in the context of a specific defalcation on the part of the
> supervisory official can the court assess whether the official's
> conduct evidenced deliberate indifference and whether there is a
> close causal relationship between the "identified deficiency" and
> the "ultimate injury."

*Sample*, 885 F.2d at 1118.

Here, in support of her Motion for Summary Judgment, Plaintiff argues that ACHS

caused the deprivation of her rights by its failure to employ two different supervisory policies,

and the risk of constitutionally cognizable harm "was so great in the prison environment that

ACHS' failure to institute these policies are enough to find deliberate indifference."  (ECF No.

94 at 13-14.)

1.  Failure to investigate

First, Plaintiff argues that ACHS failed to comply with its own policy that required its

COO Phillips to investigate all allegations of inappropriate conduct of its employees.  (ECF No.

94 at 14-15.)  Plaintiff points to record evidence where Phillips testified that ACHS did not

follow this policy and instead, allowed the Jail's IA to investigate allegations of employee

misconduct.  Hence, Plaintiff contends that instead of following policy, ACHS established a

different custom or practice in handling complaints of employee misconduct.  Yet, Plaintiff

points to no record evidence to suggest that in following this custom or practice, Phillips or

ACHS was aware that the custom or practice in deferring its investigations to the IA created an

unreasonable risk of harm of which ACHS was aware, and to which ACHS was indifferent. Plaintiff points to no record evidence which suggests that IA had delayed the commencement of its investigations in the past, and in so doing, created an unreasonable risk of harm of which ACHS was aware.

Instead, Plaintiff focuses her argument on the prison environment, and that ACHS's failure to employ its investigative policy created such a great and obvious risk of constitutional harm such that the risk, and ACHS' failure to respond thereto, will alone support findings of the existence of the risk, ACHS' knowledge of the risk, and its indifference to it.  Yet, there is no record evidence which suggests that in deferring its investigation to the IA, comprised of members of the Allegheny County Police department and employees of the Jail, that the investigation would not be thoroughly and promptly conducted by trained law enforcement personnel.  It would appear that the IA would be better qualified to conduct criminal investigations than a medical provider and its employees.  Phillips testified that she reported the incident to IA knowing that any allegation involving fraternization was to be handled by IA. (ECF No. 140-7 at 15.)  Phillips and Gasser both reprimanded Johnson (ECF No. 140-7 at 28); however, Phillips knew that IA would be conducting the investigation.  Consequently, it would not be so obvious to her and ACHS that the failure to employ ACHS' investigative policy would create a great and obvious risk of constitutional harm to prison inmates.  In fact, Phillips relied on Lieutenant Leicht with the Allegheny County Police to conduct the investigation in accordance with jail procedures; she received training annually on these standard procedures which included procedures for fraternization violations.  (ECF No. 140-7 at 41.)  Hence, in light of this training, ACHS would have been aware of no great or obvious risk of constitutional harm to prison inmates if ACHS did not conduct an investigation, even though it was a deviation from

ACHS' written policy.  She was also told during Johnson's last week of employment by

Detective Comis that "[ACHS was] in no way to indicate to Mr. Johnson or anyone else that we

were aware of [the IA's] investigation.  [Comis] felt that would impede the investigation."  (ECF

No. 140-7 at 42.)  Consequently, in *not* following the IA's directive, ACHS could reasonably

believe that it would impede the investigation.

Hence, Plaintiff's supervisory theory of failure to investigate fails as a matter of law: the

risk of constitutionally cognizable harm to prison inmates was not so great or obvious to ACHS

such that it knew of a great risk of harm and was deliberately indifferent to it.  Plaintiff's Motion

for Summary Judgment on this issue must be denied.  Likewise, ACHS' Motion for Summary

Judgment must be granted.  Plaintiff has come forward with no facts from which a reasonable

jury could conclude that ACHS was deliberately indifferent to a known risk of constitutionally

cognizable harm to Plaintiff.

        2.   Failure to remove employees from contact with the opposite sex when sexual
            abuse allegations are levied

Next, Plaintiff argues that "ACHS also had a policy *not* to remove an employee from

contact, or limit or supervise his contact with inmates of the opposite sex when a complaint was

levied against that employee."  (ECF No. 94 at 15.)  According to Plaintiff, the risk of sexual

assault in a prison setting is so high where medical staff of both genders performs procedures on

inmates of both sexes, that the failure of ACHS to adopt a policy that protects against this

occurrence or its continuation is enough to establish deliberate indifference.  Plaintiff argues that

Johnson had access to Plaintiff five (5) times after Jackson's complaint against him.  This contact

could have been avoided, according to Plaintiff, by a policy to remove, limit or supervise an

accused employee in his or her contact with patients of the opposite gender.  Plaintiff directs the

Court to ACHS' policy regarding same sex chaperones for medical procedures involving the breasts, rectum, or genitalia, or whenever requested by an inmate, (ECF No. 94 at 15; ECF No. 140-7 at 43), and ACHS' policy against abuse of any kind.  Plaintiff contends that these policies demonstrate ACHS' awareness of the potential for abuse.

As discussed at length above, however, ACHS relied on the IA to conduct the investigation once ACHS informed IA of Jackson's complaint.  In fact, after Comis' directive to "in no way [] indicate to Mr. Johnson or anyone else that we were aware of [the IA's] investigation[,]" ACHS reasonably believed that any action it might take to remove, limit, or supervise Johnson's contact with inmates of the opposite sex, could impede IA's investigation.  Again, Plaintiff directs this Court to no record evidence to suggest that ACHS knew it could not rely on the IA to conduct a prompt and thorough investigation in accordance with standard jail security procedures.

Plaintiff continues that even if the harm is not so obvious, ACHS had notice of the 2004 prosecutions of jail guards who were prosecuted for taking sexual liberties with inmates, and an incident where a nurse gave an inmate soup that the nurse brought into the jail when the inmate was sick.  Even when construed in a light most favorable to Plaintiff, these prior incidents are too dissimilar and remote in time to constitute a pattern or practice for purposes establishing that inmates like Plaintiff faced a substantial risk of being sexually abused by Nurse Johnson.  First, the 2004 prosecutions of the jail guards involved guards, not nurses, and occurred approximately six (6) years before the assault on Plaintiff.  Although a fraternization violation, the soup incident did not concern Johnson, involved no sexual overtones, and was an isolated incident within the nursing staff such that ACHS would not be placed on notice that prison inmates faced a substantial risk of sexual abuse by the nursing staff, or by Johnson in particular.  *See*

23

*Heggenmiller v. Edna Mahan Corr. Inst. for Women*, 128 Fed. Appx. 240, 245 (3d Cir. 2005) (awareness by prison officials that jail guards had committed three serious (and numerous less serious) sexual assaults on other inmates was insufficient to charge administrative defendants with knowledge that there was a substantial risk that the sexual assault by jail guards against plaintiff might take place; other incidents qualitatively dissimilar, and even in aggregate, could not have placed administrative defendants on notice of substantial risk of harm); *Hazel v. McCullough*, 3:02-cv-219, 2007 WL 1875807, * 3 (W.D. Pa. June 27, 2007) (discussing *Heggenmiller* and articulating rule that "general knowledge of prior incidents of misconduct does not place supervisory personnel on notice that particular incident might happen . . . while particularized knowledge of risk to a particular inmate or from a particular inmate [or prison official] can provide the awareness of risk necessary to hold a prison official liable.")

Hence, Plaintiff's Motion for Summary Judgment must be denied because she has not demonstrated that she is entitled to judgment as a matter of law on her claim of supervisory liability against ACHS based on the undisputed facts of record.  As to ACHS' Motion for Summary Judgment, Plaintiff has come forward with no evidence to raise a disputed issue of material fact such that a reasonable jury could find ACHS liable under a theory of supervisory liability pursuant to § 1983.  Therefore, ACHS' Motion for Summary Judgment on Plaintiff's § 1983 claim will be granted.[9]

## PROFESSIONAL NEGLIGENCE

In Count V of Plaintiff's Fourth Amended Complaint, Plaintiff attempts to make out a claim for professional negligence against ACHS.  (ECF No. 85 at ¶¶ 71-75.)  Specifically,

---

[9] Because the Court will deny Plaintiff's Motion for Summary Judgment against ACHS on her § 1983 claim, and grant ACHS' Motion for Summary Judgment on Plaintiff's § 1983 claim, the Court need not discuss ACHS' arguments as to whether Plaintiff is entitled to punitive damages pursuant to § 1983.  (ECF No. 139 at 13.)

Plaintiff avers that ACHS was negligent in failing to investigate the Jackson complaint, in failing to supervise Johnson during his contact with female inmates after the Jackson complaint, in failing to limit Johnson's contact with female inmates after the Jackson complaint, in failing to remove Johnson from contact with inmates after the Jackson complaint, and in failing to discipline Johnson beyond reminding him of ACHS' anti-fraternization policy.

ACHS contends that Plaintiff's claim for professional negligence is time barred because it appears for the first time in the Fourth Amended Complaint and does not relate back to the filing of the original complaint.  In addition, ACHS argues that Plaintiff's professional negligence claim must be dismissed because Plaintiff failed to file a certificate of merit under the Pennsylvania Rule of Civil Procedure 1042.3(a).  (ECF No. 139 at 13-14.).

First, Plaintiff's claim for professional negligence is not time barred.  Federal Rule of Civil Procedure 15 (c)(1)(B) provides that an amendment relates back to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction or occurrence set out – or attempted to be set out – in the original pleading."  Fed. R. Civ. P. 15(c)(1)(B).  Here, Plaintiff's claim in Count V directly relates to the same set of facts involving Johnson and ACHS set out in the original complaint.  Consequently, for purposes of the statute of limitations, Count V relates back to the filing of the original complaint.  *See* 3 James Wm. Moore et al., Moore's Federal Practice ¶ 15.19[2] (3d ed. 2011) ("Courts also allow relation back when the new claim is based on the same facts as the original pleading and only changes the legal theory.")

Finally, ACHS' argument that Plaintiff failed to file a certificate of merit regarding her professional negligence claim must fail.  Plaintiff filed a certificate of merit at ECF No. 13, following the filing of her original complaint.  Pennsylvania's Superior Court has consistently

held that the 60-day period for filing the certificate of merit runs from the time of filing the

original complaint, and is not restarted by the filing of any subsequent amended complaints.

*Ditch v. Waynesboro Hosp.*, 917 A.2d 317, 325-26 (Pa. Super. Ct. 2007) (discussing *O'Hara v.*

*Randall*, 879 A.2d 240, 244-45 (Pa. Super. Ct. 2005); *Hoover v. Davila*, 862 A.2d 591, 594 (Pa.

Super. Ct. 2004)).

      Here, there are numerous issues of material fact in dispute as to whether ACHS is liable

for professional negligence.  Consequently, Plaintiff is not entitled to judgment as a matter of

law on her professional negligence claim against ACHS.  Therefore, Plaintiff's Motion for

Summary Judgment against ACHS on this issue will be denied.  Further, because Plaintiff has

come forward with evidence from which a reasonable jury could conclude that ACHS is liable

for professional negligence, ACHS' Motion for Summary Judgment on Plaintiff's claim of

professional negligence will be denied without prejudice.[10]

### PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
### AGAINST RUSTIN
### AND
### RUSTIN'S MOTION FOR SUMMARY JUDGMENT
### AGAINST PLAINTIFF

      Plaintiff pursues only one legal theory against Rustin, failure to intervene, relying on

*Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002).  (ECF No. 98 at 7-10.)  Plaintiff argues

that Rustin learned of Jackson's complaint against Johnson on April 14, 2010 through the jail's

IA department.  Yet, according to Plaintiff, Rustin failed to intervene to remove Johnson from

contact with inmates, or have Johnson placed under the supervision of others when Johnson was

---

[10] There is an outstanding legal issue as to whether ACHS is a local agency for purposes of the Pennsylvania Political Subdivision Tort Claims Act ("PSTCA"), and thereby protected by immunity from state tort liability.  *See* 42 Pa. Cons. Stat. Ann. § 8541 et seq.  Therefore, the parties will have an opportunity to argue this issue before trial. The Court will include a briefing schedule in the accompanying order.

with inmates.  Finally, Plaintiff contends that Rustin failed to ensure that the investigation into Jackson's April 14, 2010 complaint commenced immediately.

In *Smith*, the United States Court of Appeals for the Third Circuit held that "a corrections officer's failure to intervene in a beating can be the basis of liability for an Eighth Amendment violation under § 1983 if the corrections officer had a reasonable opportunity to intervene and simply refused to do so."  293 F.3d at 650.  The officer's rank, according to the court, is irrelevant; what does matter is whether the official knew of the excessive force and "ignored a realistic opportunity to intervene . . . ."  *Id.* at 652.

Although Rustin would routinely learn of "what investigations [IA was] currently looking into[]" (ECF No. 128-7 at 11), there is absolutely no evidence to suggest that Rustin actually knew of the allegations against Johnson on April 14, 2010.  Plaintiff's assertion of the same is based purely on speculation, which is insufficient to withstand Rustin's Motion for Summary Judgment.  *Boyle v. United States,* 391 F. App'x 212, 215 (3d Cir. 2010) ("A plaintiff cannot avoid summary judgment with speculation; he must provide competent evidence from which a rational trier of fact can find in his favor.") (citing *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.,* 172 F.3d 238, 252 (3d Cir. 1999), *superseded by statute on other grounds as recognized by P.P. v. West Chester Area Sch. Dist.,* 585 F.3d 727 (3d Cir. 2009)).  *See also Jackson v. Danberg,* 594 F.3d 210, 226-27 (3d Cir. 2010) (declining to make an inference in favor of class of death row inmates based on pure speculation) (citing *Acumed LLC v. Advanced Surgical Servs., Inc.,* 561 F.3d 199, 228 (3d Cir. 2009) ("speculation and conjecture may not defeat a motion for summary judgment")); *Longstreet v. Holy Spirit Hosp.,* 67 F. App'x 123, 126 (3d Cir. 2003) ("A plaintiff cannot rely upon 'unsupported assertions, speculation, or conclusory allegations to avoid a

motion for summary judgment.'") (quoting *Solomon v. Soc'y of Auto. Eng'rs*, 41 F. App'x 585, 586 (3d Cir. 2002)).

Instead, Plaintiff has failed to adduce any evidence that IA informed Rustin before the five (5) alleged sexual assaults occurred, that is, between April 14, 2010 and April 26, 2010. Record evidence demonstrates that investigative reports from corrections officers were not generated, at the earliest[11], until April 23, 2010.  More importantly, record evidence is also clear that although IA was informed immediately of the Jackson complaint by Gasser on April 14, 2010 (ECF No. 128-5 at 31), Detective Comis was not "detailed" to investigate the complaint until April 26, 2010.  (ECF No. 128-1 at 1.)  Consequently, IA could have informed Rustin of the investigation as late as April 26, 2010, the same day the Jail revoked Johnson's jail security clearance.

Hence, because Plaintiff has failed to adduce any evidence that the IA informed Rustin of the Jackson complaint on April 14, 2010, or anytime thereafter before the subsequent five (5) sexual assaults allegedly occurred, Plaintiff cannot establish her claim against Rustin for failure to intervene as a matter of law.  Therefore, Plaintiff's Motion for Summary Judgment against Rustin will be denied.  Likewise, Rustin's Motion for Summary Judgment will be granted because, in light of record evidence, a reasonable jury could not conclude that Rustin was aware of the risk posed by Johnson to prison female inmates before any of the five (5) sexual assaults on Plaintiff, and with this knowledge, ignored a realistic opportunity to intervene.

Finally, the claims against Rustin in his official capacity must likewise be dismissed with prejudice.  The law is clear that a suit brought against government officials in their official capacities are really actions against the governmental entity; that is, damages are not being

---

[11] There is some discrepancy in the record as to whether investigative reports were generated by corrections officers on April 23 or April 24, 2010.  (ECF No. 128-1 at 3.)

sought from the individual but from the coffers of the entity.  *See Melo v. Hafer*, 912 F.2d 628,

635 (3d Cir. 1990) (discussing *Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989)).

Consequently, claims against Rustin in his official capacity must be dismissed with prejudice as

a matter of law, and Rustin's Motion for Summary Judgment on the issue of official capacity

claims will be granted.


### PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
### AGAINST THE COUNTY
### AND
### THE COUNTY'S MOTION FOR SUMMARY JUDGMENT
### AGAINST PLAINTIFF


In support of her Motion for Summary Judgment, Plaintiff argues that the members of IA

who are Allegheny County Police Department detectives do not receive training from the Jail

concerning policies, procedures, or the special needs and requirements of working within the Jail

environment.  Hence, this lack of training failed to alert detectives to the need to remove,

supervise or monitor a jail employee accused of sexual misconduct with an inmate.  Plaintiff

argues that even though the Jail's IA was alerted to the Jackson complaint immediately, Comis

did not begin his investigation until 12 days later.  IA's failure to commence its investigation

immediately, according to Plaintiff, allowed Johnson to sexually abuse Plaintiff five (5) times

because the IA was not trained in the importance of supervising or monitoring a suspect during

the pendency of the investigation.

The United States Court of Appeals for the Third Circuit has discussed a failure to train

claim as follows:

> [A] municipality may be liable for the failure to train its employees
> only where that failure amounts to "deliberate indifference to the
> [constitutional] rights of persons with whom the police come into

> contact." *City of Canton v. Harris*, 489 U.S. 378, 389-90 (1989);
> *see also Woloszyn v. County of Lawrence*, 396 F.3d 314, 324 (3d
> Cir. 2005).  In other words, a municipality can only be liable under
> § 1983 where the failure to train demonstrates a "deliberate" or
> "conscious" choice by the municipality.  *Woloszyn*, 396 F.3d at
> 324 (citing *City of Canton*, 489 U.S. at 389.  To determine whether
> a municipality's alleged failure to train its employees amounted to
> a deliberate or conscious choice, it must be shown that "(1)
> municipal policymakers know that employees will confront a
> particular situation; (2) the situation involves a difficult choice or a
> history of employees mishandling; and (3) the wrong choice by an
> employee will frequently cause deprivation of constitutional
> rights."  *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999)
> (citing *Walker v. N.Y.C.*, 974 F.2d 293, 297-98 (2d Cir. 1992)).

*Doe v. Luzerne County*, 660 F.3d 169, 179-80 (3d Cir. 2011).  "The deficiency of a

municipality's training program must be closely related to the plaintiff's ultimate injuries."  *City*

*of Canton*, 489 U.S. at 391.  That is, the plaintiff must "prove that the deficiency in training

actually caused [the constitutional violation at issue]."  *Id.*

Here, the record reflects that the County did not train IA to monitor or supervise jail

employees who were suspected of sexual misconduct during the pendency of an investigation.

Importantly, others at the Jail, including ACHS, understood that they were not to interfere in any

way with IA investigations.  Specifically, the Allegheny County Police officers working in IA

instructed ACHS not to investigate or notify Johnson that he was being investigated, and not to

take any action because it was a police matter.  (ECF Nos. 95, 151 at ¶ 31; ECF No. 140-7 at 14-

15, 42.)  Dana Phillips specifically testified that ACHS was "told by Detective Comis that we

were in no way to indicate to Mr. Johnson or anyone else that we were aware [of IA's

investigation of Johnson].  [Comis] felt that would impede the investigation."  (ECF No. 140-7 at

42.)  In light of this directive by IA, it alone was undertaking the responsibility for the safety of

all female inmates having contact with Johnson.  Hence, the failure of the County to train IA to

monitor jail employees suspected of sexual misconduct in conjunction with IA's directive that others not interfere with the investigation, created an unreasonable risk of constitutional injury.

On the other hand, there is record evidence that officers understood the importance of promptly commencing investigations of sexual misconduct. *See* Deposition of Ronald Pofi, ECF No. 128-9 at 16 (IA investigations of sexual improprieties by staff members would be undertaken "[f]airly fast. It could be that day, you know, fairly fast. Especially something like that [complaints of sexual impropriety] would be fast.") *See also* Deposition of Ramon C. Rustin, ECF No. 128-7 at 48 & 52 ("from my history with Internal Affairs [over seven years as Warden], they act pretty quickly on complaints of that nature.") Hence, it can be inferred from this evidence that the County understood the need for promptly commencing investigations into allegations of sexual misconduct. In fact, once Detective Comis began the investigation on April 26, 2010, Johnson's security clearance was revoked that day. Clearly, the County understood the need for prompt action when allegations of sexual misconduct were at issue and suspects continued to have unfettered access to inmates.

Yet, the record reflects that it was at least 12 days before Detective Comis was "detailed" to conduct the investigation, although record evidence reflects that ACHS notified IA of the Jackson complaint immediately after it received the complaint on April 14, 2010. The record reflects no explanation for the investigative gap in the face of the alleged sexual misconduct. *See* Deposition of Lieutenant Jeffry Korczyk, ECF No. 128-8 at 24 ("I don't know when [the Jackson complaint] was turned over, but it seems to me that as soon as the allegation was there it should have been investigated immediately.")

The record also reflects that IA was not regularly trained on the policies and procedures within the prison regarding security. Stephanie Frank, an employee of the Jail's training

department, testified that sometimes the Allegheny County Police who work at the jail have come to the training, but she is not aware of Detective Comis attending.  (ECF No. 128-3 at 53.) Further, record evidence does not reflect that the IA was trained on the importance of promptly commencing its investigations involving sexual assaults in light of the undisputed fact that such criminal investigations were the exclusive province of the IA, and that other Jail employees were to stay out of it.  *See e.g.,* Deposition of Stephanie Frank, ECF No. 128-3 at 81-82; Deposition of Kimberly Gasser, ECF No. 128-5 at 32; Deposition of Ronald Pofi, ECF No. 128-9 at 30-31.)

Hence, the Court will deny both motions for summary judgment on this issue as there are disputed issues of material fact as to the deliberate indifference of the County in failing to train IA to at least monitor Jail employees suspected of sexual misconduct during the pendency of an investigation.  The Court's analysis rests heavily on the undisputed fact that others in the Jail, including ACHS, understood that that they were to stay out of IA criminal investigations.  As a result, employees suspected of sexual misconduct retained their unfettered access to inmates they chose as targets, especially when IA investigations did not commence immediately.


**IV. CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Summary Judgment against Johnson at ECF No. 89 will be granted in its entirety.  Plaintiff's Motion for Summary Judgment against ACHS at ECF No. 93 will be denied, and ACHS' Motion for Summary Judgment at ECF No. 138 will be granted as to Plaintiff's § 1983 claim, and denied without prejudice as to Plaintiff's professional negligence claim.  Plaintiff's Motion for Summary Judgment against Rustin at ECF No. 97 will be denied.  Plaintiff's Motion for Summary Judgment against the County at ECF No. 101 will be denied.  Finally, the Motion for Summary Judgment filed by the County and Rustin

at ECF No. 125 will be granted as to Rustin, and denied as it relates to the County.  An

appropriate order will follow.


Dated: March 27, 2013

**BY THE COURT**

_____

LISA PUPO LENIHAN
CHIEF UNITED STATES MAGISTRATE JUDGE

cc:  All counsel of record
     Via electronic filing

     John Johnson, Jr.
     DOC No. 156260
     Allegheny County Jail
     950 Second Avenue
     Pittsburgh, PA  15219